UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RICKY NELSON,

                *Plaintiff,*

v.

CACV OF COLORADO, LLC and
WILLIAM C. GROSSMAN LAW, PLLC,

                *Defendants.*
_____/

<u>COMPLAINT</u>

## I.      Introduction

1.      This is an action for damages brought against debt collectors for violating the

Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*, and Michigan

Regulation of Collection Practices Act ("MRCPA"), M.C.L.§ 445.251 *et seq.*

## II.     Jurisdiction

2.      This Court has jurisdiction under 15 U.S.C. § 1692k(d) (FDCPA) and 28 U.S.C.

§ 1331. This Court has supplemental jurisdiction regarding plaintiff's state law claims under 28

U.S.C. § 1367.  Venue in this judicial district is proper because the pertinent events took place

here.

## III.    Parties

3.      Plaintiff Ricky Nelson is an adult, natural person residing in Ottawa County,

Michigan. Plaintiff is a "consumer" and "person" as the terms are defined and used in the

FDCPA.  Plaintiff is a "consumer," "debtor" and "person" as the terms are defined and used in

the MRCPA.

4.     Defendant CACV of Colorado, LLC ("CACV") is an active Colorado limited liability company, with a principal office address of 625 Pilot Road, Suite 22, Las Vegas, Nevada 89119. The registered agent for CACV is Corporation Service Company, 1560 Broadway, Suite 2090, Denver, Colorado 80202. According to documents filed on behalf of CACV in the United States Bankruptcy Court, Southern District of New York, Case No. 17-10659-jlg, Doc. No. 16, "[CACV's] primary business is to acquire, manage, and collect charged-off consumer and commercial accounts receivable . . . , which are accounts that credit issuers have charged off as uncollectible, but remain owed by the borrower and subject to collection." Upon information and belief, CACV is owned by non-party Resurgent Holdings LLC, an active Delaware limited liability company. CACV uses interstate commerce and the mails in a business the principal purpose of which is the collection of debts. CACV is a "debt collector" as the term is defined and used in the FDCPA. CACV is a "regulated person" as the term is defined and used in the MRCPA.

5.     Defendant William C. Grossman Law, PLLC ("Grossman") is an active New York Professional Service Limited Liability Company, with a principal office address of 5965 Transit Road, Suite 500, East Amherst, New York 14051. The registered agent for Grossman in Michigan is National Registered Agents, Inc., 30600 Telegraph Road, Suite 2345, Bingham Farms, Michigan 48025. Grossman is party to a written retainer agreement with CACV, pursuant to which Grossman engages in debt collection efforts on behalf of CACV. Grossman uses interstate commerce and the mails in a business the principal purpose of which is the collection of debts. Grossman regularly collects or attempts to collect, directly or indirectly, debts owed or

due or asserted to be owed or due another. Grossman is a "debt collector" as the term is defined and used in the FDCPA. Grossman is a "regulated person" as the term is defined and used in the MRCPA.

6.     CACV and Grossman each directly and indirectly participated in the efforts to collect an alleged debt from plaintiff that are described in this complaint.

7.     An entity that itself meets the definition of debt collector is liable for the unlawful collection activities carried out by another debt collector on its behalf. *See, e.g., Pollice v. National Tax Funding, L.P.,* 225 F.3d 379, 404-06 (3d Cir. 2000); *Janetos v. Fulton Friedman & Gullace, LLP,* 825 F.3d 317, 325-26 (7th Cir. 2016); *Fox v. Citicorp Credit Servs., Inc.,* 15 F.3d 1507, 1516 (9th Cir. 1994); *Wadlington v. Credit Acceptance Corp.,* 76 F.3d 103, 108 (6th Cir.1996); *Verburg v. Weltman, Weinberg & Reis Co., LPA et al.,* No. 1:13-cv-1328, 2016 WL 1273349, *7-8 (W.D. Mich. Mar. 28, 2016).

## IV.     Facts

8.     Plaintiff Ricky Nelson was married to a woman named Gail Nelson. They were divorced in 2005.

9.     Sometime prior to June of 2006, Gail Nelson used Mr. Nelson's personal information to open a credit card account ("Account") with Household Bank, No. 5408010023711118. Gail Nelson opened, used and maintained the Account without Mr. Nelson's knowledge or authorization. Gail Nelson used the Account to purchase goods and services for personal, family and household purposes. Gail Nelson failed to make payments on the Account when due and the Account went into default.

10.     On or about June 1, 2006, the Law Office of G. Reynolds Sims and Associates,

3

P.C. ("Sims"), on behalf of its client, CACV of Colorado, LLC, filed a debt collection lawsuit against Mr. Nelson in the 77th District Court for the State of Michigan, claiming more than $2,000.00 in damages. The lawsuit alleged that (a) Mr. Nelson had opened the Account with Household Bank, (b) Mr. Nelson had used the account to purchase goods and services on credit, (c) Mr. Nelson had failed to repay the debt, and (d) Household Bank had charged off and sold the account and related debt to CACV.

11.     Sims arranged to have Mr. Nelson served with summons and complaint in the 77th District Court action.

12.     Upon being served with the summons and complaint in the 77th District Court action, Mr. Nelson contacted Sims and stated that (a) he had not opened the Account, (b) up until the time he was served with the summons and complaint, he had no  knowledge of the Account, and (c) he had never used or made any payment on the Account. Sims provided Mr. Nelson with billing information regarding the Account. The information indicated that the Account had been opened and used by Mr. Nelson's ex-wife, Gail Nelson.

13.     On March 5, 2007, Sims filed documents in the 77th District Court action to dismiss the action without prejudice.

14.     On April 2, 2007, Sims, on behalf of its client, CACV, filed another debt collection lawsuit against Mr. Nelson, in the 84th District Court for the State of Michigan, Case No. 07-597-GC, claiming $2,330.10 in damages. The lawsuit was filed against Mr. Nelson and his ex-wife, Gail A. Nelson, "Jointly and Severally." The lawsuit alleged that (a) Mr. Nelson and Gail Nelson had opened the Account with  Household Bank, (b) Mr. Nelson and Gail Nelson had used the account to purchase goods and services on credit, (c) Mr. Nelson and Gail Nelson had failed to repay the debt, and (d) Household Bank had charged off and sold the account and

related debt to CACV. A copy of the complaint is attached as Exhibit A.

15.     Sims arranged to have Mr. Nelson served with summons and complaint in the 77th District Court action.

16.     Upon being served with the summons and complaint in the 84th District Court action, Mr. Nelson hired an attorney to defend Mr. Nelson in the action.

17.     On or about September 12, 2007, a default judgment was entered in the 84th District Court action against Gail Nelson only, in the amount of $2,600.57.

18.     In or about October of 2007, Mr. Nelson provided Sims with a "fraud affidavit," attesting that Gail Nelson had opened, used and maintained the Account without Mr. Nelson's knowledge or authorization.

19.     On November 5, 2007, Sims on behalf of CACV filed in the 84th District Court action, a Stipulation to Dismiss Mr. Nelson from the action, *with prejudice*. On November 8, 2007, the Court entered an Order in the 84th District Court action to dismiss Mr. Nelson from the action, *with prejudice*, and with no award of costs to either party. A copy of the filed Stipulation to Dismissal and entered Order to Dismiss are attached as Exhibit B.

20.     Despite the foregoing, in 2009, Sims on behalf of CACV filed under oath a Request in the 84th District Court action and caused the Clerk of the Court to issue a Writ of Garnishment against Mr. Nelson, falsely representing to the court that a judgment had been entered in the action against Mr. Nelson, and that Mr. Nelson owed $3,361.40 to CACV. Sims caused the Writ of Garnishment to be served on the Michigan Department of Treasury on November 2, 2009, in an effort to intercept Mr. Nelson's 2009 state income tax refund.

21.     On February 26, 2010, the Michigan Department of Treasury sent a notice to Mr. Nelson, stating that Mr. Nelson's 2009 state income tax refund in the amount of $828.00 had

been intercepted in response to the CACV Writ of Garnishment and would be paid to Sims for the benefit of CACV unless Mr. Nelson took timely action to object to the Writ of Garnishment.

22.     On February 27, 2010, Mr. Nelson placed a telephone call to Sims and complained that Sims had unlawfully served the Michigan Department of Treasury with a Writ of Garnishment on behalf of CACV and had unlawfully intercepted Mr. Nelson's 2009 state income tax refund. Mr. Nelson demanded that Sims and CACV immediately contact the Michigan Department of Treasury, withdraw the Writ of Garnishment, and cause the release Mr. Nelson's 2009 state income tax refund. Mr. Nelson followed up the telephone call with a demand letter that reiterated his position and that was mailed to both Sims and the Michigan Department of Treasury. Sims later withdrew the Writ of Garnishment and the Michigan Department of Treasury after a substantial delay sent Mr. Nelson his 2009 state income tax refund.

23.     Despite the foregoing, on or about August 18, 2010, Sims on behalf of CACV filed under oath another Request in the 84th District Court action and caused the Clerk of the Court to issue another Writ of Garnishment against Mr. Nelson, again falsely representing to the court that a judgment had been entered in the action against Mr. Nelson, and that Mr. Nelson owed $3,569.56 to CACV. Sims caused the Writ of Garnishment to be served on the Michigan Department of Treasury on November 1, 2010, in an effort to intercept Mr. Nelson's 2010 state income tax refund.

24.     On April 12, 2011, the Michigan Department of Treasury sent a notice to Mr. Nelson, stating that Mr. Nelson's 2010 state income tax refund in the amount of $975.00 had been intercepted in response to the CACV Writ of Garnishment and would be paid to Sims for the benefit of CACV unless Mr. Nelson took timely action to object to the Writ of Garnishment.

6

25.     On or about April 13, 2011, Mr. Nelson placed another telephone call to Sims and again complained that Sims had unlawfully served the Michigan Department of Treasury with a Writ of Garnishment on behalf of CACV and had unlawfully intercepted Mr. Nelson's 2010 state income tax refund. Mr. Nelson demanded that Sims and CACV immediately contact the Michigan Department of Treasury, withdraw the Writ of Garnishment, and cause the release of Mr. Nelson's 2010 state income tax refund. Mr. Nelson followed up the telephone call with a demand letter that reiterated his position and that was mailed to both Sims and the Michigan Department of Treasury. Sims later withdrew the Writ of Garnishment and the Michigan Department of Treasury after a substantial delay sent Mr. Nelson his 2010 state income tax refund.

26.     Despite the foregoing, on or about May 30, 2014, Sims on behalf of CACV filed under oath another Request in the 84th District Court action and caused the Clerk of the Court on June 9, 2014 to issue another Writ of Garnishment against Mr. Nelson, again falsely representing to the court that a judgment had been entered in the action against Mr. Nelson, and that Mr. Nelson owed $5,393.45 to CACV. Sims caused the Writ of Garnishment to be served on Huntington Bank on or about June 20, 2014, in an effort to intercept funds being held in Mr. Nelson's account with Huntington Bank.

27.     On or about June 20, 2014, Huntington Bank sent a letter to Mr. Nelson, stating that on July 18, 2014, all funds being held in Mr. Nelson's account at Huntington Bank would be paid to Sims for the benefit of CACV unless Mr. Nelson took timely action to object to the Writ of Garnishment.

28.     On or about June 20, 2014, Mr. Nelson placed another telephone call to Sims and again complained that Sims had unlawfully caused the Clerk of the Court to issue a Writ of

7

Garnishment against Mr. Nelson, had served the Writ of Garnishment on Huntington Bank, and had unlawfully caused Huntington Bank to sequester Mr. Nelson's money that was on deposit at Huntington Bank. Mr. Nelson demanded that Sims and CACV immediately contact  Huntington Bank, release the Writ of Garnishment, and cause Huntington Bank to make Mr. Nelson's money available to Mr. Nelson. Sims later filed a release of the Writ of Garnishment and Huntington Bank then allowed Mr. Nelson access to his money that was on deposit with Huntington Bank.

29.     On June 21, 2017, CACV through its attorneys filed documents in the 84th District Court action, renewing the CACV judgment for a period of another ten years, but only against Gail Nelson.

30.     Despite the foregoing, by letter dated August 22, 2017, William C. Grossman Law, PLLC wrote Mr. Nelson and demanded that Mr. Nelson pay $2,892.39 to Grossman and CACV in connection with the same Household Bank account that was described in both of the state court lawsuits filed by CACV against Mr. Nelson. The letter stated in part: "Your account has been sold and assigned to our client, CACV OF COLORADO, LLC. This office has been hired to collect the above referenced current balance that you owe our client." A copy of the letter is attached as Exhibit C.

31.     For more than ten years, CACV and its various debt collection attorneys have sued Mr. Nelson twice, filed unlawful garnishments against Mr. Nelson based on a non-existent judgment, delayed Mr. Nelson's state income tax refunds, tied up Mr. Nelson's bank account, and otherwise continued to contact, harass and abuse Mr. Nelson in efforts to coerce Mr. Nelson into paying money that the court has adjudged Mr. Nelson does not owe. Clearly, CACV and its attorneys do not have reasonable procedures in place to avoid their repeated violations of the law.

8

Mr. Nelson has tolerated enough, must resort to the filing of a federal lawsuit, and hopefully will put to an end a decade-long period of abuse by CACV and its attorneys.

32.     The FDCPA states that "[i]f a consumer notifies a debt collector in writing that the consumer refuses to pay a debt . . . the debt collector shall not communicate further with the consumer with respect to such debt . . . ." 15 U.S.C. § 1692c(c).

33.     The FDCPA states that it is unlawful for a debt collector to engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of any debt.  15 U.S.C. § 1692d.

34.     The FDCPA states that it is unlawful for a debt collector to make any false representation regarding the character, amount, or legal status of any debt.  15 U.S.C. § 1692e(2)(A).

35.     The FDCPA states that it is unlawful for a debt collector to make any false representation regarding the compensation which may be lawfully received by any debt collector for the collection of any debt.  15 U.S.C. § 1692e(2)(B).

36.     The FDCPA states that it is unlawful for a debt collector to threaten to take any action that cannot legally be taken or that is not intended to be taken.  15 U.S.C. § 1692e(5).

37.     The FDCPA states that it is unlawful for a debt collector to communicate to any person credit information which is known or which should be known to be false.  15 U.S.C. § 1692e(8).

38.     The FDCPA states that it is unlawful for a debt collector to use any false representation or deceptive means to collect or attempt to collect any debt.  15 U.S.C. § 1692e(10).

39.     The FDCPA states that it is unlawful for a debt collector to use unfair or unconscionable means to collect or attempt to collect any debt.  15 U.S.C. § 1692f.

40.     The FDCPA states that it is unlawful for a debt collector to collect any amount unless such amount is expressly authorized by the agreement creating the debt or permitted by law.  15 U.S.C. § 1692f(1).

41.     Defendants and their employees and agents have violated the FDCPA, 15 U.S.C. §§ 1692c(c), 1692d, 1692e, 1692e(2)(A), (2)(B), (5), (8) and (10), 1692f and 1692f(1).

42.     The FDCPA states in part, "It is the purpose of this subchapter to eliminate abusive debt collection practices by debt collectors" and "to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged."  15 U.S.C. § 1692(e).

43.     Defendants and their employees, managers, owners, agents, affiliates and co-conspirators, to increase their business and profits, have knowingly chosen to use debt collection practices that violate the FDCPA and Michigan law, to the competitive disadvantage of those debt collectors who have chosen to abide by the law and refrain from using those same unlawful debt collection practices.

44.     As an actual and proximate result of the acts and omissions of defendants and their employees, managers, owners, agents, affiliates and co-conspirators, plaintiff has suffered actual damages and injury, including but not limited to, monetary loss, fear, stress, mental anguish, emotional stress, acute embarrassment, anxiety, loss of sleep, and suffering, for which plaintiff should be compensated in an amount to be established by jury and at trial.

**V.      Claims for Relief**

### Count 1 – Fair Debt Collection Practices Act

45.    Plaintiff incorporates the foregoing paragraphs by reference.

46.    Each defendant has violated the FDCPA.  Each defendant's violations of the

FDCPA include, but are not necessarily limited to, the following:

      a)      Defendants violated 15 U.S.C. § 1692c;

      b)      Defendants violated 15 U.S.C. § 1692d by engaging in conduct, the natural consequence of which is to harass, oppress, or abuse a person in connection with the collection of a debt;

      c)      Defendants violated 15 U.S.C. § 1692e by using false, deceptive and misleading representations and means in connection with the collection or attempted collection of a debt; and

      d)      Defendants violated 15 U.S.C. § 1692f by using unfair and unconscionable means to collect or attempt to collect a debt from plaintiff.

**Wherefore,** plaintiff seeks judgment against defendants for:

a)    Actual damages pursuant to 15 U.S.C. § 1692k(a)(1);

b)    Statutory damages pursuant to 15 U.S.C. § 1692k(a)(2)(A);

c)    Costs and reasonable attorney's fees pursuant to 15 U.S.C. § 1692k(a)(3); and

d)    Such further relief as the court deems just and proper.

### Count 2 – Michigan Regulation of Collection Practices Act

47.    Plaintiff incorporates the foregoing paragraphs by reference.

48.    Each defendant has violated the MRCPA.  Each defendant's violations of the

MRCPA include, but are not necessarily limited to, the following:

a) Defendants violated M.C.L. § 445.252(e) by making an inaccurate, misleading, untrue, or deceptive statement or claim in a communication to collect a debt;

b) Defendants violated M.C.L. § 445.252(f) by misrepresenting in a communication with a debtor the legal status of a legal action being taken or threatened and the legal rights of a creditor or debtor;

c) Defendants violated M.C.L. § 445.252(n) by using a harassing, oppressive, or abusive method to collect a debt; and

d) Defendants violated M.C.L. § 445.252(q) by failing to implement a procedure designed to prevent a violation by an employee.

**Wherefore,** plaintiff seeks judgment against defendants for:

a) Actual damages pursuant to M.C.L. § 445.257(2);

b) Treble the actual damages pursuant to M.C.L. § 445.257(2);

c) Statutory damages pursuant to M.C.L. § 445.257(2);

d) Reasonable attorney's fees and court costs pursuant to M.C.L. § 445.257(2); and

e) Equitable relief pursuant to M.C.L. § 445.257(1).

### Demand for Trial by Jury

Plaintiff demands trial by jury.

Dated: September 8, 2017

/s/ Phillip C. Rogers
Phillip C. Rogers (P34356)
Kevin J. Rogers (P81303)
Attorneys for Plaintiff
6140 28th Street SE, Suite 115
Grand Rapids, Michigan 49546-6938
(616) 776-1176
ConsumerLawyer@aol.com